PLYMTON (SLOAT v.). See Case No. 12,-948.

PLYMTON (UNITED STATES v.). See Cases Nos. 16,057 and 16,058.

---

## Case No. 11,238.

### POAG v. The McDONALD.

### CHAMBERLAIN v. SAME.

[25 Betts, D. C. MS. 75.]

District Court, S. D. New York. April, 1859.

ADMIRALTY — TORTS ON TIDE WATER WITHIN A STATE — DECISION OF APPELLATE COURT — OBITER DICTUM.

[1. An assertion of a rule of law by an appellate court, although obiter dictum, binds an inferior court.]

[2. The admiralty jurisdiction does not extend to matters of contract or tort arising in commerce on tide water wholly between ports in the same state.]

[Overruled in The Brooklyn, Case No. 1,938.]
[See note at end of The Ann Arbor, Id. 407.]

[These were libels by John Poag and others, and by Newell Chamberlain, owner of the canal boat S. K. Williams, against the steamboat General McDonald, for negligence in towing. Heard on objection to the jurisdiction.]

Platt, Girard & Buckley, for libelants.
Benedict, Burr & Benedict, for claimants.

BETTS, District Judge. An objection to the jurisdiction of the court over the cause of action was raised and argued by the counsel in both the above cases preliminarily to the hearing upon the merits. No exception had been raised in the answers or by other form of pleading to the competency of the court to take cognizance of the causes, but it was mutually conceded between the counsel that the point should be deemed in issue on this hearing, and be pronounced upon as if specially made by the pleadings.

The facts alleged in the libels which form the grounds of action are that Chamberlain was owner of the canal boat S. K. Williams, and Poag and others, including her owner, were common carriers by water, and had in their charge the lading and cargo of the boat, to be transported by them in that capacity, and that the boat and her lading received serious injury through the culpable negligence and fault of the claimants, their officers and crew; that the steamboat McDonald was a tugboat employed in that capacity on the Hudson river between Albany and New York, in towing vessels for hire. On the 26th of July, 1858, the S. K. Williams was taken in tow at Albany by the tug, to be towed to New York for the usual fare or compensation; and it is charged that in making the passage, the steamer, by her mismanagement or culpable negligence, caused the Williams to strike upon a rock in the river, by which a serious loss and injury were sustained by the tow and her cargo. The verity of these allegations is not brought under consideration. The claimants demanded the dismissal of the libels, for the reason that the law is now settled by recent judgments of the United States supreme court, that the federal courts cannot take cognizance of actions in tort, or upon contracts of affreightment, in relation to the transportation of goods, wares or merchandize between different ports in the same state, those subjects belonging exclusively to the jurisdiction of state tribunals. The reports published in the public papers of two causes decided by the supreme court at its last session give strong color to that position. Allen v. Newberry, 21 How. [62 U. S.] 241, and Maguire v. Card, Id. 248. It is not intended now to seek to discriminate the principle presented on the facts upon which the present actions rest from the doctrines declared by the supreme court in those decisions, because, if there may be found any diversity therein, it will rather be the purpose of this inquiry to ascertain and conform to the doctrines promulgated by the supreme court, although the ruling may comprehend grounds outside the limits of the matters then

directly in contestation before that court. The books by no means fail in precedents of cases in which courts establish rules of decision which are recognised and applied in after instances, in governing rights not brought directly under consideration by the allegata et probata, calling for the particular judgment rendered. The resolution of the special theorem propounded by the court at the time may be expanded into conclusions probably logically consequent thereto, but still depending for support upon assumptions in respect to open questions of law, and not upon the foundation of any actual adjudication made on the specific points by authorized tribunals. The English and American reports of all periods furnish illustrations of this suggestion. Such declarations of law outside of the subject-matter, particularly when proceeding from courts of final resort, carry an influence with them equivalent in effect to positive authorities. Whatever the rightful theory may be in relation to declarations and interpretation of rules of law made by the supreme court in relation to the jurisdiction of subordinate federal courts, I think the safe course with the inferior court will always be to accept the plain assertion of the supreme court as the highest evidence of the fact of jurisdiction, and to avoid all scrutiny into the justness of the conclusion, and much more into the consistency with its own antecedent action in that high tribunal in making it. If, then, it is found that the supreme court has asserted in those decisions, or either of them, that this court cannot take cognizance of actions for loss or damages to vessels or property incurred upon inland waters of any character, within a particular state, when engaged solely in internal trade, business or commerce, between the ports and places of the same state, because the subject is then one exclusively of municipal and local jurisdiction, I shall not entertain any inquiry whether prior rulings of the court have been made inconsistent with that doctrine; and more particularly I shall decline all consideration of the varying reasonings, if there be such, upon which the court, at the one time or the other, may have motived its decisions. I must regard the latest assertion of the law governing the point made by the court as the authoritative one.

What, then, do the latest decisions of the supreme court determine to be the limitation of admiralty jurisdiction in the United States courts with respect to transactions on waters wholly within the territorial boundaries of a particular state of the Union, or between ports and places of the same state? This inquiry I hold to be answered and governed by the rule declared for the time being, and irrespective of all prior usages or declarations by the same court. Allen v. Newberry, the first of the above-cited cases, directly asserts these doctrines: (1) That a court of admiralty has no jurisdiction over an undertaking for the carriage and transportation of goods on the lakes or inland waters of the United States from one port to another in the same state, although negligence and misfeasance in executing the undertaking be charged as a ground of action, and also although the vessel be on a voyage from one state to another; (2) that the court has no jurisdiction in admiralty over a suit upon a contract of affreightment, carriage or transportation of property between ports and places of the same state, but that such jurisdiction belongs to the courts of the state exclusively.

The case above quoted is said by the court subsequently (Maguire v. Card) to have occurred within waters upon which the jurisdiction of the court was regulated by the act of congress of February 26, 1845 (5 Stat. 726); yet that the court regarded the restriction of jurisdiction by that statute only as declaratory of the law, and that the restriction existed independently of the statute, which, it must be presumed, imports that the limitation applies to tide waters, arms of the sea, &c., as is the locus in quo in the present action, because no claim to an admiralty jurisdiction in any respect was exercised prior to that statute over lakes and navigable waters connecting them, unless the waters were subject to the ebb and flow of the tide. This last-cited case (Maguire v. Card, 21 How. [62 U. S.] 248), decided also in December term, 1858, established this doctrine in respect to the jurisdiction of admiralty courts over waters within the territorial limits of a particular state: That it does not extend to contracts of any description entered into with a vessel engaged in the business of navigation and trade in the purely internal commerce of a state between ports and places of the same state. The vessel in that case was not a domestic one, and was employed in navigation and trade upon the Sacramento river, which lies wholly within the state of California, but is subject to the ebb and flow of the tides, and was thus, according to the usual acceptation, an arm of the sea; still, though possessing that character, it is definitely pronounced by the supreme court that those waters are not within the admiralty and maritime jurisdiction of the court of admiralty in respect to matters relating purely to the internal commerce of that state. This destitution of jurisdiction seems to be absolute, and independent of the ownership of the vessel, whether foreign or American. The transaction in Maguire v. Card was upon tide waters, and in Allen v. Newberry upon waters brought within the admiralty jurisdiction by the act of congress of February, 26, 1845; but the judgment of the court appears to be unequivocal that the jurisdiction in both cases stands upon the same principle, and is derived from and dependent upon the power of congress to regulate commerce with foreign nations and among the several states and with the Indian Tribes, and cannot be exercised in respect to

purely internal navigation and trade or transportation carried on within the territorial limits of a particular state, whatever may be the cause of action or form of remedy.

The counsel for the libellants claim in these cases that the actions are substantially in tort, as the damage incurred was owing to the culpable management of the tug. and that the larger restriction of admiralty jurisdiction in local waters declared by those decisions of the supreme court should be limited to matters of contract, and not embrace those of tort. It must be observed that no such reserve or qualification of the doctrine is intimated by the court; and, further, that in Allen v. Newberry, 21 How. [62 U. S.] 244, the libel states as the gravamen of the suit that the goods were shipped on board the vessel (on Lake Michigan), to be delivered at Milwaukee, "and that the master, by reason of negligence and the unskilful navigation of the vessel and her unseaworthiness, lost them in the course of the voyage." The loss was proved to have been caused by jettison. Those allegations, and the proofs given under them, presented a case of malfeasance and loss by fault of the master of the vessel, so that it authorized at law an action of trespass, or a case against the owner for the injury and wrong, although the relationship between the parties in its incipiency sounded in contract. Alexander v. Greene, 3 Hill, 9, 7 Hill, 574; Wells v. Steam Nav. Co., 4 Seld. [8 N. Y.] 375, 2 Comst. [2 N. Y.] 204. The facts alleged in these libels before the court accordingly constitute a cause of action which might be prosecuted in trespass or case, at common law; and it is to be observed that the admiralty courts do not regard forms of action, or technicalities of any kind, in their procedures. Dupont v. Vance, 9 How. [60 U. S.] 162.

In admiralty the culpable propelling of the S. K. Williams upon a wharf, a rock, or other stationary object would be a tortious collision, equally as if the injury was inflicted by drawing her wrongfully against another moving object. The decision in Allen v. Newberry must therefore be accepted as determining that negligence or misconduct of the master of the steamer Fashion in respect to the property of the libellants, in its carriage or transportation, causing its loss thereby, did not entitle the libellants to maintain an action in the admiralty of contract or tort against the steamer, she being on waters not subject to the jurisdiction of the court, because she was employed in business of commerce and navigation between ports and places of the same state, and not between different states or territories; and in Maguire v. Card it was determined that the admiralty cannot take cognizance of any matter of contract or tort occurring upon the tide waters between ports or places in any particular state, and in relation to the purely internal commerce of the state, and which does not in any way affect trade or commerce with other states. This judgment of the supreme court withdraws from the provision of the constitution (article 3, subd. 2) the broad meaning imported in the grant of admiralty powers "to all cases of admiralty and maritime jurisdiction, and restricts its operation to matters pertaining to commerce with foreign nations, among the several states, and with the Indian tribes." Const. art. 1, § 8.

I think the language of the court in these judgments embraces every ground of action put forth in the libels in these two suits; and in submission to those opinions I shall decide, without respect to any anterior rulings of the supreme court upon kindred subjects, that this court cannot take cognizance of these suits, either upon the undertaking of the tug or the tort feasance of her master and crew. The libels must therefore be dismissed, with costs.

[NOTE. On appeal to the circuit court, the decree of this court was affirmed as far as it dismissed the libel for want of jurisdiction. Case No. 11,239. The question then arose as to what decree should be made by the circuit court in regard to costs. Id. 8,756.]